Michael R. Lozeau (State Bar No. 142893)
Richard Drury (State Bar No. 163559)
Douglas J. Chermak (State Bar No. 233382)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205 (fax)
E-mail: michael@lozeaudrury.com
        doug@lozeaudrury.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHWESTERN WIRE, INC., a corporation,<br><br>Defendant. | Case No. _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, by and through its

counsel, hereby alleges:

## I.    JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (the "Clean Water Act" or "the

Act").  This Court has subject matter jurisdiction over the parties and the subject matter of this

action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. §

1331 (an action arising under the laws of the United States).  The relief requested is authorized

pursuant to 28 U.S.C. §§ 2201-02 (power to issue declaratory relief in case of actual

controversy and further necessary relief based on such a declaration); 33 U.S.C. §§ 1319(b),

1  1365(a) (injunctive relief); and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

2      2.    On December 23, 2014, Plaintiff provided notice to Defendant of its

3  violations of the Act, and of Plaintiff's intention to file suit against Defendant, to the

4  Administrator of the United States Environmental Protection Agency ("EPA"); the

5  Administrator of EPA Region IX; the Executive Director of the State Water Resources

6  Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control

7  Board, Central Valley Region ("Regional Board"); and to Defendant, as required by the Act,

8  33 U.S.C. § 1365(b)(1)(A).  A true and correct copy of CSPA's notice letter is attached as

9  Exhibit A, and is incorporated by reference.

10      3.    More than sixty days have passed since notice was served on Defendant and

11  the State and federal agencies.  Plaintiff is informed and believes, and thereupon alleges, that

12  neither the EPA nor the State of California has commenced or is diligently prosecuting a

13  court action to redress the violations alleged in this complaint.  This action's claim for civil

14  penalties is not barred by any prior administrative penalty under Section 309(g) of the Act,

15  33 U.S.C. § 1319(g).

16      4.    Venue is proper in the Eastern District of California pursuant to Section

17  505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located

18  within this judicial district.  Pursuant to Local Rule 120, intradistrict venue is proper in

19  Sacramento, California, because the source of the violations is located within Sacramento

20  County.

21  **II.**    __INTRODUCTION__

22      5.    This complaint seeks relief for Defendant's discharges of polluted storm water

23  from Defendant's industrial facility located at 4318 Dudley Blvd. in McClellan, California

24  ("Facility") in violation of the Act and National Pollutant Discharge Elimination System

25  ("NPDES") Permit No. CAS000001, State Water Resources Control Board Water Quality

26  Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ, Water

27  Quality Order No. 97-03-DWQ, (hereinafter the "Permit" or "General Permit").  Defendant's

28  violations of the discharge, treatment technology, monitoring requirements, and other

COMPLAINT

2

1  procedural and substantive requirements of the General Permit and the Act are ongoing and

2  continuous.

3  **III.**    **PARTIES**

4       6.    Plaintiff CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

5  ("CSPA") is a non-profit public benefit corporation organized under the laws of the State of

6  California with its main office in Stockton, California.  CSPA has approximately 2,000

7  members who live, recreate and work in and around waters of the State of California,

8  including the Sacramento River.  CSPA is dedicated to the preservation, protection, and

9  defense of the environment, the wildlife and the natural resources of all waters of California.

10 To further these goals, CSPA actively seeks federal and state agency implementation of the

11 Act and other laws and, where necessary, directly initiates enforcement actions on behalf of

12 itself and its members.  CSPA brings this action on behalf of its members.  CSPA's interest

13 in reducing Defendant's discharges of pollutants into the Sacramento River and its tributaries

14 and requiring Defendant to comply with the requirements of the General Permit are germane

15 to its purposes.  Litigation of the claims asserted and relief requested in this Complaint does

16 not require the participation in this lawsuit of individual members of CSPA.

17      7.    Members of CSPA reside in and around Magpie Creek, Steelhead Creek, the

18 Sacramento River, and the Delta and enjoy using those waters for recreation and other

19 activities.  One or more members of CSPA use and enjoy the waters into which Defendant

20 has caused, is causing, and will continue to cause, pollutants to be discharged.  One or more

21 members of CSPA use those areas to fish, sail, boat, kayak, swim, bird watch, view wildlife

22 and engage in scientific study including monitoring activities, among other things.

23 Defendant's discharges of pollutants threaten or impair each of those uses or contribute to

24 such threats and impairments.  Thus, the interests of one or more of CSPA's members have

25 been, are being, and will continue to be adversely affected by Defendant's failure to comply

26 with the Clean Water Act and the Permit.  The relief sought herein will redress the harms to

27 Plaintiff caused by Defendant's activities.

28      8.    Continuing commission of the acts and omissions alleged above will

COMPLAINT

3

irreparably harm Plaintiff and one or more of its members, for which harm they have no plain, speedy or adequate remedy at law.

9.       Defendant SOUTHWESTERN WIRE, INC. (hereinafter "Defendant" or "Southwestern Wire") is a corporation that operates a wire manufacturing facility in McClellan, California.

**IV.    STATUTORY BACKGROUND**

10.      In order to discharge storm water lawfully in California, industrial dischargers, including Southwestern Wire, must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.  33 U.S.C. § 1311(a).

11.      The General Permit contains several prohibitions.  Effluent Limitation B(3) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  BAT and BCT include both nonstructural and structural measures.  General Permit, Section A(8).  Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the General Permit prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

12.      The General Permit was in effect and applicable to the Facility through June 30, 2015.  For discharges that began on July 1, 2015, the General Permit was renewed by State Water Resources Control Board Water Quality Order No. 2015-0057-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001 (hereinafter "2015 General Permit").  Effluent Limitation V(A) of the 2015 General Permit mirrors the BAT/BCT provisions of the General Permit.

COMPLAINT

4

13.     The Regional Board has established water quality standards for the Sacramento River and its tributaries in the Water Quality Control Plan for the Sacramento and San Joaquin River Basins, generally referred to as the Basin Plan.  The Basin Plan contains water quality objectives for iron and zinc, contains a maximum contaminant level ("MCL") for aluminum, and a secondary MCL for aluminum and iron.

14.     The EPA has adopted freshwater numeric water quality standards for zinc.

15.     EPA has established Parameter Benchmark Values as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  EPA has established Parameter Benchmark Values for the following parameters, among others:  pH – 6.0 – 9.0 standard units ("s.u."); total suspended solids ("TSS") – 100 mg/L, total organic carbon ("TOC") – 110 mg/L, iron – 1.0 mg/L, nitrate plus nitrite as nitrogen ("N+N") – 0.68 mg/L; and zinc – 0.13 mg/L.  The 2015 General Permit contains Numeric Action Levels ("NALs") for these same parameters, with the exception of TOC, that generally mirror the Benchmark Values.

16.     Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements.  33 U.S.C. §§1365(a)(1) and (f), § 1362(5).  An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a).  Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day per violation, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365.  *See also* 40 C.F.R. §§ 19.1 - 19.4.

## V.     STATEMENT OF FACTS

17.     Defendant operates an industrial facility located at 4318 Dudley Blvd. in McClellan, California.  On information and belief, CSPA alleges that the Facility is engaged in the manufacturing of chain link fences by weaving together galvanized and plastic coated wire.  The Facility falls within SIC code 3496.  Approximately 60% of the facility is unpaved, and large portions of the Facility are used for storing finished products.  On information and belief, Plaintiff alleges that there is at least one large building located on the

COMPLAINT

5

1   property.  Plaintiff is informed and believes, and thereupon alleges, that materials used in the

2   manufacturing of chain link fences are stored both inside and outside of this building.

3         18.     Defendant collects and discharges storm water falling on the Facility through

4   at least four outfalls.  The Facility's outfalls discharge to channels that flow to Magpie Creek,

5   which flows into Steelhead Creek, which then flows into the Sacramento River.

6         19.     On information and belief, Plaintiff alleges that the industrial activities at the

7   site include the manufacturing of chain link fences, and storage of materials used in that

8   manufacturing.

9         20.     Plaintiff is informed and believes, and thereupon alleges, that storm water

10  flows easily over the surface of the Facility, collecting suspended sediment, dirt, oils, grease,

11  metals, and other pollutants as it flows to the Facility's outfalls, and towards channels that

12  flow to Magpie Creek, which flows into Steelhead Creek, which flows into the Sacramento

13  River.

14        21.     Since at least February 25, 2010, Defendant has taken samples or arranged for

15  samples to be taken of storm water discharges at the Facility.  The sample results were

16  reported in the Facility's annual reports submitted to the Regional Board.

17        22.     The levels of pH, aluminum, iron, zinc, TSS, N+N, and TOC in storm water

18  detected by the Facility have exceeded water quality objectives in the Basin Plan, MCLs and

19  Secondary MCLs in the Basin Plan, benchmark values established by the EPA, and NALs

20  established by the State Board.

21        23.     On information and belief, Plaintiff alleges that Defendant has failed to

22  implement BAT and BCT at the Facility for its discharges of pH, aluminum, iron, zinc, TSS,

23  N+N, and TOC.  Section B(3) of the General Permit requires that Defendant implement BAT

24  for toxic and nonconventional pollutants, and BCT for conventional pollutants, by no later

25  than October 1, 1992, or the date that the Facility was opened.  Effluent Limitation V(A) of

26  the 2015 General Permit contains the same requirement.  As of the date of this Complaint,

27  Defendant has failed to implement BAT and BCT.

28        24.     On information and belief, Plaintiff alleges that Defendant has failed to

COMPLAINT

6

implement an adequate Storm Water Pollution Prevention Plan for the Facility.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not set forth site-specific best management practices that are consistent with BAT or BCT for the Facility.  According to information available to CSPA, Defendant's SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant discharges.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP does not include each of the mandatory elements required by Section A of the General Permit, and required by Section X of the 2015 General Permit.

25.     Information available to CSPA indicates that as a result of these practices, storm water containing excessive pollutants is being discharged during rain events from the Facility directly to channels that flow to Magpie Creek, which flows into Steelhead Creek, which flows into the Sacramento River.

26.     Plaintiff is informed and believes, and thereupon alleges, that Defendant has failed and continues to fail to alter the Facility's SWPPP and site-specific BMPs consistent with Section A(9) of the General Permit and Section X(H) of the 2015 General Permit.

27.     Information available to Plaintiff indicates that, due to the continued discharge of contaminated storm water from the Facility, Defendant has not fulfilled the requirements set forth in the General Permit and the 2015 General Permit for discharges from the Facility. Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

## VI.     CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Failure to Implement the Best Available and**
**Best Conventional Treatment Technologies**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

28.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

29.     The General Permit's SWPPP requirements and Effluent Limitation B(3) require dischargers to reduce or prevent pollutants in their storm water discharges through

implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.  The requirement to implement BAT/BCT is contained in Effluent Limitation V(A) of the 2015 General Permit.  Defendant has failed to implement BAT and BCT at the Facility for its discharges of pH, aluminum, iron, zinc, TSS, N+N, TOC, and other un-monitored pollutants in violation of Effluent Limitation B(3) of the General Permit and Effluent Limitation V(A) of the 2015 General Permit.

30.     Each day from December 14, 2010, through June 30, 2015,  that Defendant has failed to develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

31.     Each day since July 1, 2015, that Defendant has failed to develop and implement BAT and BCT in violation of the 2015 General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

32.     Defendant has been in violation of the BAT/BCT requirements every day since at least August 7, 2010.  Defendant continues to be in violation of the BAT/BCT requirements each day it fails to develop and fully implement BAT/BCT at the Facility.

### SECOND CAUSE OF ACTION
**Discharges of Contaminated Storm Water
In Violation of Permit Conditions and the Act
(Violations of 33 U.S.C. §§ 1311, 1342)**

33.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

34.     Discharge Prohibition A(2) of the General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water Limitations C(1) and C(2) of the General Permit require that storm water discharges and authorized non-storm water discharges shall not adversely affect human health or the environment, and shall not cause or contribute to a violation of any water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

35.     Discharge Prohibition III(D) of the 2015 General Permit requires that discharges that violate any discharge prohibitions contained in applicable Basin Plans are prohibited.  Receiving Water Limitation VI(A) of the 2015 General Permit requires that dischargers shall ensure that industrial storm water discharges do not cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water. Receiving Water Limitation VI(B) of the 2015 General Permit requires that dischargers shall ensure that industrial storm water discharges do not adversely affect human health or the environment.

36.     Plaintiff is informed and believes, and thereupon alleges, that from at least December 14, 2010, through June 30, 2015, Defendant has been discharging polluted storm water from the Facility in excess of applicable water quality standards in violation of Discharge Prohibition A(2) of the General Permit.

37.     Plaintiff is informed and believes, and thereupon alleges, that since July 1, 2015, Defendant has been discharging polluted storm water from the Facility in excess of applicable water quality standards in violation of Discharge Prohibition III(D) of the 2015 General Permit.

38.     Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are causing or contributing to the violation of the applicable water quality standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan in violation of Receiving Water Limitation C(2) of the General Permit and Receiving Water Limitation VI(A) of the 2015 General Permit.

39.     Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are adversely affecting human health and the environment in violation of Receiving Water Limitation C(1) of the General Permit and Receiving Water Limitation VI(B) of the 2015 General Permit.

40.     Every day since at least December 14, 2010, that Defendant has discharged and continues to discharge polluted storm water from the Facility in violation of the General Permit, and since July 1, 2015, the 2015 General Permit, is a separate and distinct violation

COMPLAINT

of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

## THIRD CAUSE OF ACTION

### Failure to Prepare, Implement, Review, and Update
### an Adequate Storm Water Pollution Prevention Plan
### (Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

41.     Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

42.     Section A and Provision E of the General Permit require dischargers of storm water associated with industrial activity to develop and implement an adequate SWPPP no later than October 1, 1992.

43.     Defendant has failed to develop and implement an adequate SWPPP for the Facility.  Defendant's ongoing failure to develop and implement an adequate SWPPP for the Facility is evidenced by, *inter alia*, Defendant's outdoor storage of various materials without appropriate best management practices; the continued exposure of significant quantities of various materials to storm water flows; the continued exposure and tracking of waste resulting from the operation of vehicles at the site; the failure to either treat storm water prior to discharge or to implement effective containment practices; and the continued discharge of storm water pollutants from the Facility at levels in excess of EPA benchmark values, NALs, and water quality standards.

44.     Defendant has failed to adequately update the Facility's SWPPP in response to the analytical results of the Facility's storm water monitoring.

45.     Each day since December 14, 2010, that Defendant has failed to develop, implement and update an adequate SWPPP for the Facility is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

46.     Defendant has been in violation of the SWPPP requirements every day since December 14, 2010.  Defendant continues to be in violation of the SWPPP requirements each day that it fails to develop and fully implement an adequate SWPPP for the Facility.

COMPLAINT

**FOURTH CAUSE OF ACTION**
**Failure to Develop and Implement an**
**Adequate Monitoring and Reporting Program**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

47.     Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

48.     Section B of the General Permit requires dischargers of storm water associated with industrial activity to have developed and be implementing a monitoring and reporting program (including, *inter alia*, sampling and analysis of discharges) no later than October 1, 1992.  These requirements are continued by Section XI of the 2015 General Permit.

49.     Defendant has failed to develop and implement an adequate monitoring and reporting program for the Facility.  Defendant's ongoing failure to develop and implement an adequate monitoring and reporting program are evidenced by, *inter alia*, its failure to analyze storm water discharges from Outfalls DP #2, DP #3, and DP#4 during the 2009-2010, 2010-2011, and the 2011-2012 wet seasons.

50.     Each day since December 14, 2010, that Defendant has failed to develop and implement an adequate monitoring and reporting program for the Facility in violation of the General Permit is a separate and distinct violation of the General Permit, and since July 1, 2015, the 2015 General Permit, and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  The absence of requisite monitoring and analytical results are ongoing and continuous violations of the Act.

**VII.   RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.   Declare Defendant to have violated and to be in violation of the Act as alleged herein;

b.   Enjoin Defendant from discharging polluted storm water from the Facility unless authorized by the 2015 General Permit;

c.   Enjoin Defendant from further violating the substantive and procedural

1   requirements of the 2015 General Permit;

2       d.   Order Defendant to immediately implement storm water pollution control

3   and treatment technologies and measures that are equivalent to BAT or BCT, and prevent

4   pollutants in the Facility's storm water from contributing to violations of any water quality

5   standards;

6       e.   Order Defendant to comply with the 2015 General Permit's monitoring and

7   reporting requirements, including ordering supplemental monitoring to compensate for past

8   monitoring violations;

9       f.   Order Defendant to prepare a SWPPP consistent with the 2015 General

10  Permit's requirements and implement procedures to regularly review and update the SWPPP;

11      g.   Order Defendant to provide Plaintiff with reports documenting the quality

12  and quantity of their discharges to waters of the United States and their efforts to comply with

13  the Act and the Court's orders;

14      h.   Order Defendant to pay civil penalties of $37,500 per day per violation for

15  each violation of the Act pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§

16  1319(d), 1365(a) and 40 C.F.R. §§ 19.1 - 19.4;

17      i.   Order Defendant to take appropriate actions to restore the quality of waters

18  impaired or adversely affected by its activities;

19      j.   Award Plaintiff's costs (including reasonable investigative, attorney,

20  witness, compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. §

21  1365(d); and,

22      k.   Award any such other and further relief as this Court may deem appropriate.

23

24  Dated:  February 12, 2016                    Respectfully submitted,

25                                              LOZEAU DRURY LLP

26                                  By:     ___/s/ Douglas J. Chermak_____

27                                          Douglas J. Chermak
                                            Attorneys for Plaintiff
28                                          CALIFORNIA SPORTFISHING
                                            PROTECTION ALLIANCE

COMPLAINT

# EXHIBIT A



T 510.836.4200    410 12th Street, Suite 250    www.lozeaudrury.com
F 510.836.4205    Oakland, Ca 94607              doug@lozeaudrury.com

VIA CERTIFIED MAIL
<u>RETURN RECEIPT REQUESTED</u>

December 23, 2014

David J. Weinand, President
Michael Gonzalez, Operations Manager
Southwestern Wire, Inc.
4318 Dudley Blvd., Building 475E
McClellan, CA 95652

**Re:     Notice of Violations and Intent to File Suit under the Federal Water
          Pollution Control Act**

Dear Mr. Weinand and Mr. Gonzalez:

I am writing on behalf of California Sportfishing Protection Alliance ("CSPA") in regard to violations of the Clean Water Act (the "Act") that CSPA believes are occurring at Southwestern Wire facility located at 4318 Dudley Blvd., Building 475E, in McClellan, CA ("Facility").  CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the Sacramento River and other California waters.  This letter is being sent to Southwestern Wire, Inc., David J. Weinand, and Michael Gonzalez as the responsible owners or operators of the Facility (all recipients are hereinafter collectively referred to as "Southwestern Wire").

This letter addresses Southwestern Wire's unlawful discharge of pollutants from the Facility to Magpie Creek, which flows to Steelhead Creek, then into the Sacramento River.  The Facility is discharging storm water pursuant to National Pollutant Discharge Elimination System ("NPDES") Permit No. CA S000001, State Water Resources Control Board ("State Board") Order No. 92-12-DWQ as amended by Order No. 97-03-DWQ (hereinafter "General Permit").[1]

---

[1] On April 1, 2014, the State Board reissued the General Permit, continuing its mandate that industrial facilities implement the best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") and, in addition, establishing numeric action levels mandating additional pollution control efforts. State Board Order 2014-0057-DWQ. The new permit, however, does not go into effect until July 1, 2015. Until that time, the current General Permit remains in full force and effect.

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 2 of 20

The WDID identification number for the Facility listed on documents submitted to the California Regional Water Quality Control Board, Central Valley Region ("Regional Board") is 5S34I021305.  The Facility is engaged in ongoing violations of the substantive and procedural requirements of the General Permit.

Section 505(b) of the Clean Water Act requires a citizen to give notice of intent to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act (33 U.S.C. § 1365(a)).  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA") and the State in which the violations occur.

As required by the Clean Water Act, this Notice of Violation and Intent to File Suit provides notice of the violations that have occurred, and continue to occur, at the Facility. Consequently, Southwestern Wire is hereby placed on formal notice by CSPA that, after the expiration of sixty days from the date of this Notice of Violations and Intent to Sue, CSPA intends to file suit in federal court against Southwestern Wire under Section 505(a) of the Clean Water Act (33 U.S.C. § 1365(a)), for violations of the Clean Water Act and the General Permit. These violations are described more extensively below.

**I.      Background.**

On November 28, 2007, the State Board received and processed Southwestern Wire's Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI").  In its NOI, Southwestern Wire certifies that the Facility is classified under SIC Code 3496 (Miscellaneous Fabricated Wire Products). Southwestern Wire manufactures chain link fences and bale tie wire at the Facility, where it rents a 37,000 square-foot warehouse and a 21,000 square-foot storage area.  The Facility collects and discharges storm water from at least four outfalls.  On information and belief, CSPA alleges that all storm water discharges from the Facility contain storm water that is commingled with runoff from the Facility from areas where industrial processes occur.  The outfalls discharge to Magpie Creek, which flows to Steelhead Creek, then into the Sacramento River.

The Regional Board has identified beneficial uses of the Central Valley Region's waters and established water quality standards for the Sacramento River and its tributaries, which include Magpie Creek and Steelhead Creek, in "The Water Quality Control Plan (Basin Plan) for the California Regional Water Quality Control Board, Central Valley Region – The Sacramento River Basin and The San Joaquin River Basin," generally referred to as the Basin Plan.  *See* http://www.waterboards.ca.gov/centralvalley/water_issues/basin_plans/sacsjr.pdf.  The beneficial uses of the Sacramento River and its tributaries, including Magpie Creek and Steelhead Creek, include, among others, water contact recreation, non-contact water recreation, municipal and domestic water supply, endangered and threatened species habitat, shellfish harvesting, and fish spawning.  The non-contact water recreation use is defined as "[u]ses of water for recreational activities involving proximity to water, but where there is generally no body contact with water, nor any likelihood of ingestion of water.  These uses include, but are

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 3 of 20

not limited to, picnicking, sunbathing, hiking, camping, boating, . . . hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities." Basin Plan at II-1.00 – II-2.00. Visible pollution, including visible sheens and cloudy or muddy water from industrial areas, impairs people's use of the Sacramento River for contact and non-contact water recreation.

The Basin Plan establishes water quality standards for the Sacramento River. It includes a narrative toxicity standard which states that "[a]ll waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life." *Id.* at III-8.01. It provides that "[w]ater shall not contain floating material in amounts that cause nuisance or adversely affect beneficial uses." *Id.* at III-5.00. It provides that "[w]ater shall be free of discoloration that causes nuisance or adversely affects beneficial uses." *Id.* The Basin Plan also provides that "[w]aters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses." *Id.* at III-9.00. It provides that "[w]aters shall not contain suspended materials in concentrations that cause nuisance or adversely affect beneficial uses." *Id.* at III-7.00. The Basin Plan also prohibits the discharges of oil and grease, stating that "[w]aters shall not contain oils, greases, waxes, or other materials in concentrations that cause nuisance, result in a visible film or coating on the surface of the water or on objects in the water, or otherwise adversely affect beneficial uses." *Id*. at III-6.00. The Basin Plan provides that the pH shall not be depressed below 6.5 nor raised above 8.5. *Id.*

The Basin Plan also provides that "[a]t a minimum, [surface] water designated for use as domestic or municipal supply (MUN) shall not contain concentrations of chemical constituents in excess of the maximum contaminant levels (MCLs) specified in the following provisions of Title 22 of the California Code of Regulations, which are incorporated by reference into this plan: Tables 64431-A (Inorganic Chemicals) and 64431-B (Fluoride) of Section 64431, Table 64444-A (Organic Chemicals) of Section 64444, and Table 64449-A (Secondary Maximum Contaminant Levels ["SMCLs"]-Consumer Acceptance Limits) and 64449-B (Secondary Maximum Containment Levels-Ranges) of Section 64449. This incorporation-by-reference is prospective, including future changes to the incorporated provisions as the changes take effect. Table 64449-A provides an SMCL for iron of 0.3 mg/L. Table III-1 of the Basin Plan provides a water quality objective ("WQO") for iron of 0.3 mg/L and for zinc of 0.1 mg/L. Table 64449-A provides an SMCL for aluminum of 0.2 mg/L and for iron of 0.3 mg/L. Table 64431-A provides an MCL for aluminum of 1 mg/L.

The EPA has adopted a freshwater numeric water quality standard for zinc of 0.12 mg/L (Criteria Maximum Concentration – "CMC"). 65 Fed.Reg. 31712 (May 18, 2000) (California Toxics Rule).

The EPA has published benchmark levels as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT").[2]

---

[2] The Benchmark Values can be found at:

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 4 of 20

The following benchmarks have been established for pollutants discharged by Southwestern Wire: pH – 6.0 - 9.0 standard units ("s.u."); total suspended solids ("TSS") – 100 mg/L; total organic carbon ("TOC") – 110 mg/L; aluminum – 0.75 mg/L; N+N – 0.68 mg/L; iron – 1.0 mg/L; and zinc – 0.13 mg/L.[3]

## II.      Alleged Violations of the NPDES Permit.

### A.      *Discharges in Violation of the Permit*

Southwestern Wire has violated and continues to violate the terms and conditions of the General Permit.  Section 402(p) of the Act prohibits the discharge of storm water associated with industrial activities, except as permitted under an NPDES permit (33 U.S.C. § 1342) such as the General Permit.  The General Permit prohibits any discharges of storm water associated with industrial activities or authorized non-storm water discharges that have not been subjected to BAT or BCT.  Effluent Limitation B(3) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.  BAT and BCT include both nonstructural and structural measures.  General Permit, Section A(8).  Conventional pollutants are TSS, O&G, pH, biochemical oxygen demand, and fecal coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  *Id.*; 40 C.F.R. § 401.15.

In addition, Discharge Prohibition A(1) of the General Permit prohibits the discharge of materials other than storm water (defined as non-storm water discharges) that discharge either directly or indirectly to waters of the United States.  Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the General Permit also prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.  The General Permit does not authorize the application of any mixing zones for complying with Receiving Water Limitation C(2).  As a result, compliance with this provision is measured at the Facility's discharge monitoring locations.

---

http://www.epa.gov/npdes/pubs/msgp2008_finalpermit.pdf and
http://cwea.org/p3s/documents/multi-sectorrev.pdf (Last accessed on December 22, 2014).
[3] The value for zinc is hardness dependent, and corresponds to a total hardness of 100-125 mg/L, which is the default listing in the California Toxics Rule.

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 5 of 20

     Southwestern Wire has discharged and continues to discharge storm water with
unacceptable levels of pH, TSS, TOC, aluminum, iron, N+N, zinc, and other pollutants in
violation of the General Permit. Southwestern Wire's sampling and analysis results reported to
the Regional Board confirm discharges of specific pollutants and materials other than storm
water in violation of the Permit provisions listed above. Self-monitoring reports under the
Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club
v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

     The following discharges of pollutants from the Facility have contained concentrations of
pollutants in excess of numeric water quality standards and in violation of narrative water quality
standards established in the Basin Plan and the California Toxics Rule. They have thus violated
Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2), are
evidence of ongoing violations of Effluent Limitation B(3) of the General Permit, and constitute
unauthorized discharges of pH, aluminum, iron, N+N, zinc, and storm water associated with
industrial activity in violation of Section 301(a) of the CWA.

| Date | Parameter | Observed Concentration/ Conditions | Basin Plan Water Quality Objective/ EPA California Toxics Rule | Outfall (as identified by the Facility) |
|---|---|---|---|---|
| 10/22/2012 | pH | 5.9 mg/L | 6.5 – 8.5 s.u. | DP #3 |
| 2/28/2014 | Aluminum | 1.28 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #1 |
| 2/28/2014 | Aluminum | 2.72 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #2 |
| 2/28/2014 | Aluminum | 1.3 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #3 |
| 2/28/2014 | Aluminum | 2.19 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #4 |
| 2/8/2014 | Aluminum | 4.73 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #1 |
| 2/8/2014 | Aluminum | 2.39 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #2 |
| 2/8/2014 | Aluminum | 2.55 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #3 |
| 2/8/2014 | Aluminum | 0.891 mg/L | 0.2 mg/L (SMCL) | DP #4 |
| 2/19/2013 | Aluminum | 1.28 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #1 |
| 2/19/2013 | Aluminum | 1.03 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #2 |
| 2/19/2013 | Aluminum | 0.565 mg/L | 0.2 mg/L (SMCL) | DP #3 |
| 2/19/2013 | Aluminum | 0.529 mg/L | 0.2 mg/L (SMCL) | DP #4 |

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 6 of 20

| 11/8/2012 | Aluminum | 0.949 mg/L | 0.2 mg/L (SMCL) | DP #1 |
|---|---|---|---|---|
| 11/8/2012 | Aluminum | 1.62 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #2 |
| 11/8/2012 | Aluminum | 1.08 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #3 |
| 11/8/2012 | Aluminum | 0.685 mg/L | 0.2 mg/L (SMCL) | DP #4 |
| 10/22/2012 | Aluminum | 0.213 mg/L | 0.2 mg/L (SMCL) | DP #1 |
| 10/22/2012 | Aluminum | 0.243 mg/L | 0.2 mg/L (SMCL) | DP #2 |
| 10/22/2012 | Aluminum | 0.262 mg/L | 0.2 mg/L (SMCL) | DP #3 |
| 10/22/2012 | Aluminum | 0.829 mg/L | 0.2 mg/L (SMCL) | DP #4 |
| 3/31/2012 | Aluminum | 0.825 mg/L | 0.2 mg/L (SMCL) | DP #1 |
| 10/5/2011 | Aluminum | 0.533 mg/L | 0.2 mg/L (SMCL) | DP #1 |
| 11/20/2010 | Aluminum | 0.756 mg/L | 0.2 mg/L (SMCL) | DP #1 |
| 11/7/2010 | Aluminum | 1.43 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | DP #1 |
| 2/25/2010 | Aluminum | 8.87 mg/L | 1 mg/L (MCL) / 0.2 mg/L (SMCL) | Outfall #1 |
| 2/28/2014 | Iron | 1.6 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #1 |
| 2/28/2014 | Iron | 3.64 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #2 |
| 2/28/2014 | Iron | 1.78 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #3 |
| 2/28/2014 | Iron | 3.21 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #4 |
| 2/8/2014 | Iron | 6.72 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #1 |
| 2/8/2014 | Iron | 3.58 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #2 |
| 2/8/2014 | Iron | 3.97 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #3 |
| 2/8/2014 | Iron | 1.18 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #4 |
| 2/19/2013 | Iron | 2.22 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #1 |
| 2/19/2013 | Iron | 1.85 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #2 |
| 2/19/2013 | Iron | 1.05 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #3 |
| 2/19/2013 | Iron | 0.807 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #4 |
| 11/8/2012 | Iron | 2.39 mg/L | 0.3 mg/L (WQO) / | DP #1 |

Notice of Violations and Intent to File Suit

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 7 of 20

| | | | 0.3 mg/L (SMCL) | |
|---|---|---|---|---|
| 11/8/2012 | Iron | 2.31 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #2 |
| 11/8/2012 | Iron | 1.49 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #3 |
| 11/8/2012 | Iron | 2.06 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #4 |
| 10/22/2012 | Iron | 0.522 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #1 |
| 10/22/2012 | Iron | 0.412 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #2 |
| 10/22/2012 | Iron | 0.916 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #3 |
| 10/22/2012 | Iron | 1.23 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #4 |
| 3/31/2012 | Iron | 1.34 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #1 |
| 10/5/2011 | Iron | 0.773 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #1 |
| 11/20/2010 | Iron | 0.411 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #1 |
| 11/7/2010 | Iron | 1.92 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | DP #1 |
| 2/25/2010 | Iron | 13.8 mg/L | 0.3 mg/L (WQO) / 0.3 mg/L (SMCL) | Outfall #1 |
| 2/28/2014 | Zinc | 0.404 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #1 |
| 2/28/2014 | Zinc | 0.503 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #2 |
| 2/28/2014 | Zinc | 0.907 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #3 |
| 2/28/2014 | Zinc | 0.912 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #4 |
| 2/8/2014 | Zinc | 1.32 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #1 |
| 2/8/2014 | Zinc | 0.915 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #2 |
| 2/8/2014 | Zinc | 1.06 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #3 |
| 2/8/2014 | Zinc | 0.576 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #4 |
| 2/19/2013 | Zinc | 1.06 mg/L | 0.1 mg/L (WQO) / | DP #1 |

Notice of Violations and Intent to File Suit

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 8 of 20

| | | | 0.12 mg/L (CMC) | |
|---|---|---|---|---|
| 2/19/2013 | Zinc | 1.2 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #2 |
| 2/19/2013 | Zinc | 0.837 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #3 |
| 2/19/2013 | Zinc | 0.544 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #4 |
| 11/8/2012 | Zinc | 2.11 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #1 |
| 11/8/2012 | Zinc | 1.87 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #2 |
| 11/8/2012 | Zinc | 1.32 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #3 |
| 11/8/2012 | Zinc | 1.84 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #4 |
| 10/22/2012 | Zinc | 0.522 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #1 |
| 10/22/2012 | Zinc | 1.65 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #2 |
| 10/22/2012 | Zinc | 9.52 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #3 |
| 10/22/2012 | Zinc | 2.41 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #4 |
| 3/31/2012 | Zinc | 0.466 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #1 |
| 10/5/2011 | Zinc | 0.975 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #1 |
| 11/20/2010 | Zinc | 0.316 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #1 |
| 11/7/2010 | Zinc | 0.685 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | DP #1 |
| 2/25/2010 | Zinc | 1.04 mg/L | 0.1 mg/L (WQO) / 0.12 mg/L (CMC) | Outfall #1 |
| 4/1/2014 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #1 |
| 4/1/2014 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #2 |
| 4/1/2014 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #3 |
| 4/1/2014 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #4 |
| 3/26/2014 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #1 |
| 3/26/2014 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #2 |
| 3/26/2014 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #3 |
| 3/26/2014 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #4 |

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 9 of 20

| 2/28/2014 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | DP #1 |
| 2/28/2014 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | DP #2 |
| 2/28/2014 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | DP #3 |
| 2/28/2014 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | DP #4 |
| 2/8/2014 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | DP #1 |
| 2/8/2014 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | DP #2 |
| 2/8/2014 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | DP #3 |
| 2/8/2014 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | DP #4 |
| 2/19/2013 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #1 |
| 2/19/2013 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #2 |
| 2/19/2013 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #3 |
| 2/19/2013 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #4 |
| 10/22/2012 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #1 |
| 10/22/2012 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #2 |
| 10/22/2012 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #3 |
| 10/22/2012 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #4 |
| 3/31/2012 | Narrative | Oil Sheen | Basin Plan at III-6.00 | DP #1 |
| 1/19/2012 | Narrative | Cloudy/Oil Sheen | Basin Plan at III-6.00; Basin Plan at III-7.00 | DP #1 |
| 5/10/2010 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #1 |
| 4/12/2010 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #1 |
| 3/2/2010 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #1 |
| 2/25/2010 | Narrative | Cloudy/Turbid | Basin Plan at III-7.00; Basin Plan at III-9.00 | Outfall #1 |
| 2/4/2010 | Narrative | Cloudy | Basin Plan at III-7.00 | DP #1 |
| 1/13/2010 | Narrative | Cloudy | Basin Plan at III-7.00 | Not Indicated |

The information in the above table reflects data gathered from Southwestern Wire's self-monitoring during the 2009-2010, 2010-2011, 2011-2012, 2012-2013, and 2013-2014 wet seasons.  CSPA alleges that since December 23, 2009, and continuing through today, Southwestern Wire has discharged storm water contaminated with pollutants at levels that exceed one or more applicable water quality standards, including but not limited to each of the following:

Notice of Violations and Intent to File Suit

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 10 of 20

- pH – 6.5 – 8.5 s.u. (Water Quality Objective)
- Aluminum – 1 mg/L (MCL)
- Aluminum – 0.2 mg/L (SMCL)
- Iron – 0.3 mg/L (Water Quality Objective)
- Iron – 0.3 mg/L (Secondary MCL)
- Zinc – 0.12 mg/L (CMC)
- Zinc – 0.1 mg/L (Water Quality Objective)
- Oil Sheen – Waters shall not contain oils, greases, waxes, or other materials in concentrations that cause nuisance, result in a visible film or coating on the surface of the water or on objects in the water, or otherwise adversely affect beneficial uses.  (Basin Plan at III-6.00)
- Suspended Material – Waters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses.  (Basin Plan at III-7.00)
- Turbidity – Waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses.  (Basin Plan at III-9.00)

The following discharges of pollutants from the Facility have violated Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2), are evidence of ongoing violations of Effluent Limitation B(3) of the General Permit and constitute unauthorized discharges of TSS, iron, zinc, and storm water associated with industrial activity in violation of Section 301(a) of the CWA.

| Date | Parameter | Observed Concentration | EPA Benchmark Value | Outfall (as identified by the Facility) |
|---|---|---|---|---|
| 2/28/2014 | Aluminum | 1.28 mg/L | 0.75 mg/L | DP #1 |
| 2/28/2014 | Iron | 1.6 mg/L | 1.0 mg/L | DP #1 |
| 2/28/2014 | Zinc | 0.404 mg/L | 0.13 mg/L | DP #1 |
| 2/28/2014 | Total Suspended Solids | 135 mg/L | 100 mg/L | DP #2 |
| 2/28/2014 | Aluminum | 2.72 mg/L | 0.75 mg/L | DP #2 |
| 2/28/2014 | Iron | 3.64 mg/L | 1.0 mg/L | DP #2 |
| 2/28/2014 | Zinc | 0.503 mg/L | 0.13 mg/L | DP #2 |
| 2/28/2014 | Total Suspended Solids | 152 mg/L | 100 mg/L | DP #3 |
| 2/28/2014 | Aluminum | 1.3 mg/L | 0.75 mg/L | DP #3 |
| 2/28/2014 | Iron | 1.78 mg/L | 1.0 mg/L | DP #3 |
| 2/28/2014 | Zinc | 0.907 mg/L | 0.13 mg/L | DP #3 |
| 2/28/2014 | Aluminum | 2.19 mg/L | 0.75 mg/L | DP #4 |
| 2/28/2014 | Iron | 3.21 mg/L | 1.0 mg/L | DP #4 |
| 2/28/2014 | Zinc | 0.912 mg/L | 0.13 mg/L | DP #4 |
| 2/8/2014 | Total Suspended Solids | 166 mg/L | 100 mg/L | DP #1 |
| 2/8/2014 | Aluminum | 4.73 mg/L | 0.75 mg/L | DP #1 |

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 11 of 20

| 2/8/2014 | Iron | 6.72 mg/L | 1.0 mg/L | DP #1 |
|---|---|---|---|---|
| 2/8/2014 | Zinc | 1.32 mg/L | 0.13 mg/L | DP #1 |
| 2/8/2014 | Total Suspended Solids | 166 mg/L | 100 mg/L | DP #2 |
| 2/8/2014 | Aluminum | 4.73 mg/L | 0.75 mg/L | DP #2 |
| 2/8/2014 | Iron | 6.72 mg/L | 1.0 mg/L | DP #2 |
| 2/8/2014 | Zinc | 1.32 mg/L | 0.13 mg/L | DP #2 |
| 2/8/2014 | Total Suspended Solids | 117 mg/L | 100 mg/L | DP #3 |
| 2/8/2014 | Aluminum | 2.55 mg/L | 0.75 mg/L | DP #3 |
| 2/8/2014 | Iron | 3.97 mg/L | 1.0 mg/L | DP #3 |
| 2/8/2014 | Zinc | 1.06 mg/L | 0.13 mg/L | DP #3 |
| 2/8/2014 | Aluminum | 0.891 mg/L | 0.75 mg/L | DP #4 |
| 2/8/2014 | Iron | 1.18 mg/L | 1.0 mg/L | DP #4 |
| 2/8/2014 | Zinc | 0.576 mg/L | 0.13 mg/L | DP #4 |
| 2/19/2013 | Aluminum | 1.28 mg/L | 0.75 mg/L | DP #1 |
| 2/19/2013 | Iron | 2.22 mg/L | 1.0 mg/L | DP #1 |
| 2/19/2013 | Zinc | 1.06 mg/L | 0.13 mg/L | DP #1 |
| 2/19/2013 | Aluminum | 1.03 mg/L | 0.75 mg/L | DP #2 |
| 2/19/2013 | Iron | 1.85 mg/L | 1.0 mg/L | DP #2 |
| 2/19/2013 | Zinc | 1.2 mg/L | 0.13 mg/L | DP #2 |
| 2/19/2013 | Iron | 1.05 mg/L | 1.0 mg/L | DP #3 |
| 2/19/2013 | Zinc | 0.837 mg/L | 0.13 mg/L | DP #3 |
| 2/19/2013 | Zinc | 0.544 mg/L | 0.13 mg/L | DP #4 |
| 11/8/2012 | Aluminum | 0.949 mg/L | 0.75 mg/L | DP #1 |
| 11/8/2012 | Iron | 2.39 mg/L | 1.0 mg/L | DP #1 |
| 11/8/2012 | Nitrate + Nitrite as N | 0.695 mg/L | 0.68 mg/L | DP #1 |
| 11/8/2012 | Zinc | 2.11 mg/L | 0.13 mg/L | DP #1 |
| 11/8/2012 | Aluminum | 1.62 mg/L | 0.75 mg/L | DP #2 |
| 11/8/2012 | Iron | 2.31 mg/L | 1.0 mg/L | DP #2 |
| 11/8/2012 | Zinc | 1.87 mg/L | 0.13 mg/L | DP #2 |
| 11/8/2012 | Total Suspended Solids | 154 mg/L | 100 mg/L | DP #3 |
| 11/8/2012 | Aluminum | 1.08 mg/L | 0.75 mg/L | DP #3 |
| 11/8/2012 | Iron | 1.49 mg/L | 1.0 mg/L | DP #3 |
| 11/8/2012 | Nitrate + Nitrite | 0.804 mg/L | 0.68 mg/L | DP #3 |
| 11/8/2012 | Zinc | 1.32 mg/L | 0.13 mg/L | DP #3 |
| 11/8/2012 | Iron | 2.06 mg/L | 1.0 mg/L | DP #4 |
| 11/8/2012 | Zinc | 1.84 mg/L | 0.13 mg/L | DP #4 |
| 10/22/2012 | Zinc | 0.522 mg/L | 0.13 mg/L | DP #1 |
| 10/22/2012 | Nitrate+Nitrite as N | 1 mg/L | 0.68 mg/L | DP #2 |
| 10/22/2012 | Zinc | 1.65 mg/L | 0.13 mg/L | DP #2 |
| 10/22/2012 | pH | 5.9 mg/L | 6.0 – 9.0 s.u. | DP #3 |
| 10/22/2012 | Total Organic Carbon | 286 mg/L | 110 mg/L | DP #3 |
| 10/22/2012 | Total Suspended Solids | 220 mg/L | 100 mg/L | DP #3 |

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 12 of 20

| 10/22/2012 | Nitrate + Nitrite as N | 0.98 mg/L | 0.68 mg/L | DP #3 |
|---|---|---|---|---|
| 10/22/2012 | Zinc | 9.52 mg/L | 0.13 mg/L | DP #3 |
| 10/22/2012 | Aluminum | 0.829 mg/L | 0.75 mg/L | DP #4 |
| 10/22/2012 | Iron | 1.23 mg/L | 1.0 mg/L | DP #4 |
| 10/22/2012 | Zinc | 2.41 mg/L | 0.13 mg/L | DP #4 |
| 3/31/2012 | Aluminum | 0.825 mg/L | 0.75 mg/L | DP #1 |
| 3/31/2012 | Iron | 1.34 mg/L | 1.0 mg/L | DP #1 |
| 3/31/2012 | Zinc | 0.466 mg/L | 0.13 mg/L | DP #1 |
| 10/5/2011 | Zinc | 0.975 mg/L | 0.13 mg/L | DP #1 |
| 11/20/2010 | Aluminum | 0.756 mg/L | 0.75 mg/L | DP #1 |
| 11/20/2010 | Zinc | 0.316 mg/L | 0.13 mg/L | DP #1 |
| 11/7/2010 | Aluminum | 1.43 mg/L | 0.75 mg/L | DP #1 |
| 11/7/2010 | Iron | 1.92 mg/L | 1.0 mg/L | DP #1 |
| 11/7/2010 | Nitrate + Nitrite as N | 1.35 mg/L | 0.68 mg/L | DP #1 |
| 11/7/2010 | Zinc | 0.685 mg/L | 0.13 mg/L | DP #1 |
| 2/25/2010 | Total Suspended Solids | 523 mg/L | 100 mg/L | Outfall #1 |
| 2/25/2010 | Aluminum | 8.87 mg/L | 0.75 mg/L | Outfall #1 |
| 2/25/2010 | Iron | 13.8 mg/L | 1.0 mg/L | Outfall #1 |
| 2/25/2010 | Zinc | 1.04 mg/L | 0.13 mg/L | Outfall #1 |

The information in the above table reflects data gathered from Southwestern Wire's self-monitoring during the 2009-2010, 2010-2011, 2011-2012, 2012-2013, and 2013-2014 wet seasons.  CSPA alleges that since at least December 23, 2009, Southwestern Wire has discharged storm water contaminated with pollutants at levels that exceed one or more applicable EPA Benchmarks, including but not limited to each of the following:

- pH – 6.0 – 9.0 s.u.
- Total Suspended Solids – 100 mg/L
- Total Organic Carbon – 110 mg/L
- Aluminum – 0.75 mg/L
- Iron – 1.0 mg/L
- Nitrate + Nitrite as N – 0.68 mg/L
- Zinc – 0.13 mg/L

CSPA's investigation, including its review of Southwestern Wire's analytical results documenting pollutant levels in the Facility's storm water discharges well in excess of applicable water quality standards and EPA's benchmark values, indicates that Southwestern Wire has not implemented BAT and BCT at the Facility for its discharges of pH, TSS, TOC, aluminum, iron, N+N, zinc, and other pollutants, in violation of Effluent Limitation B(3) of the General Permit. Southwestern Wire was required to have implemented BAT and BCT by no later than October 1, 1992, or since the date the Facility opened.  Thus, Southwestern Wire is discharging polluted storm water associated with its industrial operations without having implemented BAT and BCT.

Notice of Violations and Intent to File Suit

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 13 of 20

In addition, the numbers listed above indicate that the Facility is discharging polluted storm water in violation of Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Permit.  CSPA alleges that such violations also have occurred and will occur on other rain dates, including on information and belief every significant rain event that has occurred since December 23, 2009 and that will occur at the Facility subsequent to the date of this Notice of Violation and Intent to File Suit.  Attachment A, attached hereto, sets forth each of the specific rain dates on which CSPA alleges that Southwestern Wire has discharged storm water containing impermissible and unauthorized levels of pH, TSS, TOC, aluminum, iron, N+N, and zinc in violation of Section 301(a) of the Act as well as Effluent Limitation B(3), Discharge Prohibitions A(1) and A(2), and Receiving Water Limitations C(1) and C(2) of the General Permit.[4]

These unlawful discharges from the Facility are ongoing.  Each discharge of storm water containing any of these pollutants constitutes a separate violation of the General Permit and the Act.  Each discharge of storm water constitutes an unauthorized discharge of pH, TSS, TOC, aluminum, iron, N+N, zinc, and storm water associated with industrial activity in violation of Section 301(a) of the CWA.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Southwestern Wire is subject to penalties for violations of the General Permit and the Act since December 23, 2009.

**B.**   ***Failure to Develop and Implement an Adequate Monitoring and Reporting Program.***

Section B of the General Permit describes the monitoring requirements for storm water and non-storm water discharges.  Facilities are required to make monthly visual observations of storm water discharges (Section B(4)) and quarterly visual observations of both unauthorized and authorized non-storm water discharges (Section B(3)).  Section B(5) requires facility operators to sample and analyze at least two storm water discharges from all storm water discharge locations during each wet season.  Section B(7) requires that the visual observations and samples must represent the "quality and quantity of the facility's storm water discharges from the storm event."

The above-referenced data was obtained from the Facility's monitoring program as reported in its Annual Reports submitted to the Regional Board.  This data is evidence that the Facility has violated various Discharge Prohibitions, Receiving Water Limitations, and Effluent Limitations in the General Permit.  To the extent the storm water data collected by Southwestern Wire is not representative of the quality of the Facility's various storm water discharges and that

---

[4] The rain dates on the attached table are all the days when 0.1" or more rain was observed at a weather station in Fair Oaks, California, approximately 9.5 miles from the Facility. http://www.ipm.ucdavis.edu/WEATHER/SITES/sacramento.html (Last accessed on December 23, 2014).

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 14 of 20

the Facility failed to monitor all qualifying storm water discharges, CSPA alleges that the
Facility's monitoring program violates Sections B(3), (4), (5) and (7) of the General Permit.

In addition, on information and belief, CSPA alleges that Southwestern Wire failed to
sample and analyze storm water discharges from Outfalls DP #2, DP #3, and DP#4 during the
2009-2010, 2010-2011, and the 2011-2012 wet seasons.  This results in at least 18 violations of
the General Permit.

The above violations are ongoing.  Consistent with the five-year statute of limitations
applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act,
Southwestern Wire is subject to penalties for violations of the General Permit and the Act's
monitoring and sampling requirements since December 23, 2009.

### C.   Failure to Prepare, Implement, Review and Update an Adequate Storm Water Pollution Prevention Plan.

Section A and Provision E(2) of the General Permit require dischargers of storm water
associated with industrial activity to develop, implement, and update an adequate storm water
pollution prevention plan ("SWPPP") no later than October 1, 1992.  Section A(1) and Provision
E(2) requires dischargers who submitted an NOI pursuant to the General Permit to continue
following their existing SWPPP and implement any necessary revisions to their SWPPP in a
timely manner, but in any case, no later than August 1, 1997.

The SWPPP must, among other requirements, identify and evaluate sources of pollutants
associated with industrial activities that may affect the quality of storm and non-storm water
discharges from the facility and identify and implement site-specific best management practices
("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water and
authorized non-storm water discharges (General Permit, Section A(2)).  The SWPPP must
include BMPs that achieve BAT and BCT (Effluent Limitation B(3)).  The SWPPP must
include: a description of individuals and their responsibilities for developing and implementing
the SWPPP (General Permit, Section A(3)); a site map showing the facility boundaries, storm
water drainage areas with flow pattern and nearby water bodies, the location of the storm water
collection, conveyance and discharge system, structural control measures, impervious areas,
areas of actual and potential pollutant contact, and areas of industrial activity (General Permit,
Section A(4)); a list of significant materials handled and stored at the site (General Permit,
Section A(5)); a description of potential pollutant sources including industrial processes, material
handling and storage areas, dust and particulate generating activities, a description of significant
spills and leaks, a list of all non-storm water discharges and their sources, and a description of
locations where soil erosion may occur (General Permit, Section A(6)).

The SWPPP also must include an assessment of potential pollutant sources at the Facility
and a description of the BMPs to be implemented at the Facility that will reduce or prevent
pollutants in storm water discharges and authorized non-storm water discharges, including

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 15 of 20

structural BMPs where non-structural BMPs are not effective (General Permit, Section A(7), (8)).  The SWPPP must be evaluated annually to ensure effectiveness and must be revised where necessary (General Permit, Section A(9),(10)).

CSPA's review of conditions at Southwestern Wire and Southwestern Wire's Annual Reports indicate that Southwestern Wire has been operating with an inadequately developed or implemented SWPPP in violation of the requirements set forth above.  Southwestern Wire has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary.  For example, on information and belief, despite multiple assurances in its Annual Reports that it would implement BMPs to reduce the iron concentrations in its storm water discharges, the Facility has failed to adequately evaluate and revise its BMPs to reduce those iron concentrations.  Southwestern Wire has been in continuous violation of Section A and Provision E(2) of the General Permit every day since December 23, 2009, and will continue to be in violation every day that Southwestern Wire fails to prepare, implement, review, and update an effective SWPPP.  Southwestern Wire is subject to penalties for violations of the Order and the Act occurring since December 23, 2009.

### D.    Failure to File True and Correct Annual Reports.

Section B(14) of the General Permit requires dischargers to submit an Annual Report by July 1st of each year to the executive officer of the relevant Regional Board.  The Annual Report must be signed and certified by an appropriate corporate officer.  General Permit, Sections B(14), C(9), (10).  Section A(9)(d) of the General Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Permit.  *See also* General Permit, Sections C(9) and (10) and B(14).

 For the previous three years, Southwestern Wire and its agents David J. Weinand and Michael Gonzalez, inaccurately certified in their Annual Reports that the facility was in compliance with the General Permit.  Consequently, Southwestern Wire has violated Sections A(9)(d), B(14) and C(9) & (10) of the General Permit every time Southwestern Wire failed to submit a complete or correct report and every time Southwestern Wire or its agents falsely purported to comply with the Act.  Southwestern Wire is subject to penalties for violations of Section (C) of the General Permit and the Act occurring since June 29, 2010.

## III.    Persons Responsible for the Violations.

CSPA puts Southwestern Wire, David J. Weinand, and Michael Gonzalez on notice that they are the persons responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts Southwestern Wire on notice that it intends to include those persons in this action.

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 16 of 20

## IV.    Name and Address of Noticing Parties.

The name, address and telephone number of California Sportfishing Protection Alliance is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainier Avenue
Stockton, CA 95204
Tel. (209) 464-5067
deltakeep@me.com

## V.    Counsel.

CSPA has retained legal counsel to represent it in this matter.  Please direct all communications to:

Michael R. Lozeau
Douglas J. Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, California 94607
Tel. (510) 836-4200
michael@lozeaudrury.com
doug@lozeaudrury.com

## VI.    Penalties.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects Southwestern Wire to a penalty of up to $37,500 per day per violation for all violations.  In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)), permits prevailing parties to recover costs and fees, including attorneys' fees.

CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  CSPA intends to file a citizen suit under Section 505(a) of the Act against Southwestern Wire and its agents for the above-referenced violations upon the expiration of the 60-day notice period.  However, during the 60-day notice period, CSPA would be willing to discuss effective remedies for the violations noted in this letter.  If you wish to pursue such discussions in the absence of litigation, CSPA suggests that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.

Notice of Violations and Intent to File Suit

David J. Weinand and Michael Gonzalez
Southwestern Wire
December 23, 2014
Page 17 of 20


CSPA does not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

                    Sincerely,

                    Douglas J. Chermak
                    Lozeau Drury LLP
                    Attorneys for California Sportfishing Protection Alliance


cc via first class mail:     Kathlyn Moore
                             Agent for Service of Process for Southwestern Wire, Inc.
                             (Entity No. C3049283)
                             4318 Dudley Blvd., Building 475E
                             McClellan, CA 95652

## <u>SERVICE LIST – via certified mail</u>

Gina McCarthy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Thomas Howard, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Eric Holder, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Jared Blumenfeld, Regional Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA, 94105

Pamela C. Creedon, Executive Officer
Regional Water Quality Control Board
Central Valley Region
11020 Sun Center Drive #200
Rancho Cordova, CA  95670-6114

# ATTACHMENT A

## Rain Dates, Southwestern Wire, McClellan, CA

| | | |
|---|---|---|
| 1/12/2010 | 12/25/2010 | 1/21/2012 |
| 1/13/2010 | 12/26/2010 | 1/22/2012 |
| 1/17/2010 | 12/28/2010 | 1/23/2012 |
| 1/18/2010 | 12/29/2010 | 1/24/2012 |
| 1/19/2010 | 1/1/2011 | 1/25/2012 |
| 1/20/2010 | 1/2/2011 | 1/26/2012 |
| 1/21/2010 | 2/16/2011 | 1/27/2012 |
| 1/22/2010 | 2/17/2011 | 1/28/2012 |
| 2/4/2010 | 2/18/2011 | 1/29/2012 |
| 2/5/2010 | 2/19/2011 | 1/30/2012 |
| 2/6/2010 | 2/24/2011 | 1/31/2012 |
| 2/9/2010 | 2/25/2011 | 2/1/2012 |
| 3/10/2010 | 3/2/2011 | 2/2/2012 |
| 3/12/2010 | 3/6/2011 | 2/3/2012 |
| 3/25/2010 | 3/13/2011 | 2/4/2012 |
| 3/31/2010 | 3/14/2011 | 2/5/2012 |
| 4/4/2010 | 3/15/2011 | 2/6/2012 |
| 4/11/2010 | 3/16/2011 | 2/7/2012 |
| 4/12/2010 | 3/18/2011 | 2/8/2012 |
| 4/20/2010 | 3/19/2011 | 2/9/2012 |
| 4/21/2010 | 3/20/2011 | 2/10/2012 |
| 4/28/2010 | 3/23/2011 | 2/11/2012 |
| 5/10/2010 | 3/24/2011 | 2/12/2012 |
| 5/25/2010 | 3/26/2011 | 2/13/2012 |
| 5/26/2010 | 4/21/2011 | 2/14/2012 |
| 5/27/2010 | 4/25/2011 | 2/15/2012 |
| 6/25/2010 | 5/9/2011 | 2/16/2012 |
| 10/23/2010 | 5/15/2011 | 2/17/2012 |
| 10/24/2010 | 5/17/2011 | 2/18/2012 |
| 10/30/2010 | 5/25/2011 | 2/19/2012 |
| 11/7/2010 | 5/28/2011 | 2/20/2012 |
| 11/19/2010 | 6/1/2011 | 2/21/2012 |
| 11/20/2010 | 6/4/2011 | 2/22/2012 |
| 11/23/2010 | 6/28/2011 | 2/23/2012 |
| 11/27/2010 | 10/4/2011 | 2/24/2012 |
| 12/2/2010 | 10/5/2011 | 2/25/2012 |
| 12/4/2010 | 10/6/2011 | 2/26/2012 |
| 12/5/2010 | 10/10/2011 | 2/27/2012 |
| 12/6/2010 | 11/5/2011 | 2/28/2012 |
| 12/14/2010 | 11/19/2011 | 2/29/2012 |
| 12/17/2010 | 11/20/2011 | 3/1/2012 |
| 12/18/2010 | 11/24/2011 | 3/13/2012 |
| 12/19/2010 | 1/19/2012 | 3/14/2012 |
| 12/22/2010 | 1/20/2012 | 3/16/2012 |

Notice of Violations and Intent to File Suit

**ATTACHMENT A**
Rain Dates, Southwestern Wire, McClellan, California

| | | |
|---|---|---|
| 3/17/2012 | 12/5/2012 | 4/1/2014 |
| 3/18/2012 | 12/13/2012 | 4/25/2014 |
| 3/25/2012 | 12/17/2012 | 5/5/2014 |
| 3/27/2012 | 12/21/2012 | 9/25/2014 |
| 3/28/2012 | 12/22/2012 | 10/31/2014 |
| 3/31/2012 | 12/23/2012 | 11/1/2014 |
| 4/3/2012 | 12/25/2012 | 11/13/2014 |
| 4/4/2012 | 1/5/2013 | 11/20/2014 |
| 4/5/2012 | 1/6/2013 | 11/22/2014 |
| 4/6/2012 | 2/19/2013 | 11/28/2014 |
| 4/7/2012 | 3/20/2013 | 11/30/2014 |
| 4/8/2012 | 3/23/2013 | 12/2/2014 |
| 4/9/2012 | 3/24/2013 | 12/3/2014 |
| 4/10/2012 | 11/19/2013 | 12/6/2014 |
| 4/11/2012 | 11/20/2013 | 12/11/2014 |
| 4/12/2012 | 11/21/2013 | 12/12/2014 |
| 4/13/2012 | 12/6/2013 | 12/15/2014 |
| 4/25/2012 | 1/29/2014 | 12/16/2014 |
| 6/4/2012 | 1/30/2014 | 12/19/2014 |
| 10/22/2012 | 2/6/2014 | 12/20/2014 |
| 10/23/2012 | 2/7/2014 | 12/21/2014 |
| 11/1/2012 | 2/8/2014 | 12/22/2014 |
| 11/8/2012 | 2/9/2014 | |
| 11/9/2012 | 2/26/2014 | |
| 11/16/2012 | 2/27/2014 | |
| 11/17/2012 | 2/28/2014 | |
| 11/18/2012 | 3/2/2014 | |
| 11/20/2012 | 3/3/2014 | |
| 11/21/2012 | 3/5/2014 | |
| 11/28/2012 | 3/10/2014 | |
| 11/29/2012 | 3/25/2014 | |
| 11/30/2012 | 3/26/2014 | |
| 12/1/2012 | 3/29/2014 | |
| 12/2/2012 | 3/31/2014 | |